(C.D. 2070)

ELECTRIC & MUSICAL INDUSTRIES (US), LTD. *v.* UNITED STATES

United States Customs Court, First Division

(Decided on rehearing [C.D. 1973] March 6, 1959)

*Barnes, Richardson & Colburn (Edward N. Glad* and *E. Thomas Honey* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This protest relates to certain recorded tapes that were assessed with duty at the rate of 20 per centum ad valorem under paragraph 31(a) (1) and (2) of the Tariff Act of 1930, as modified by T.D. 51802, as articles in chief value of cellulose acetate. The protest alleges that "said merchandise is properly dutiable at 15% under Par. 1542 and T.D. 51802." Paragraph 1542, as modified by T.D. 51802, provides for:

Phonographs, gramophones, graphophones, dictophones, and similar articles and parts thereof, not specially provided for, 15 per centum ad valorem.

The case was the subject of our decision in *Electric & Musical Industries (US), Ltd.* v. *United States,* 40 Cust. Ct. 140, C.D. 1973, wherein we sustained plaintiff's claim. In reaching the conclusion, we found that the recorded tapes in question are exclusively used with, and essential to the operation of, a tape recorder and playback machine, identified herein as the "AMPEX 35 Tape Recorder" (plaintiff's illustrative exhibit 2), being an instrument that reproduces sound or replays previous recordings and which is also used for recordings. In our decision, C.D. 1973, *supra,* the operation and functions of this tape recorder and playback machine were described as follows:

* * * As an instrument for reproducing sound or for replaying recordings, its important phase is the top plate, equipped with two "hubs" (one on the upper right-hand side and the other on the upper left-hand side), a recording head, and a so-called "idler" that controls the movement or action of the tape while the machine is operating. To replay a recording or reproduce sound from the recorded tape, the metal core upon which the tape is wound is fitted into the hub on the left-hand side of the machine, and the tape is threaded through the record-

ing head. Pressing a button releases the tape, which travels around the idler and winds on the blank hub on the right-hand side of the machine. The sound is emitted through a separate speaker that is plugged into the machine and mounted on a jack.

In its capacity as a recorder, the machine under discussion produces a master disk record. To perform this function, there is required a special cutting lathe "which takes the impulses from this machine and from the tape, and from there you cut your master record," usually made of an acetate base material. The witness described the production of a master disk record as follows (R. 22–23):

> You go from this particular tape, through your cutting lathe, and through a series of mixing boxes and angles on your lathe. It needs an experienced engineer to do the cutting there. From there the master goes into what they call a bath, copper bath. From that you create the reverse of that, which is then called a mother. The mother in turn makes the series, a metal mother, which is copper, and then which is nickelplated, creates a series of what we call stampers. The stampers go into the pressing facilities at the plant, and two stampers, top and bottom, then create the disk record as we know it.

The treasurer of the plaintiff corporation, who was the sole witness, testified that this tape recorder and playback machine cannot be used without recorded tapes, such as those under consideration, and that these recorded tapes are essential to the use of that machine. He described the articles that are *eo nomine* provided for in paragraph 1542, as modified. In this connection, he testified that "A gramophone is actually a sound box, through which electronically, or acoustically, through the use of a needle on a disk, reproduces sound * * *"; that there is "no difference" between a gramophone and a phonograph; and that the only difference between a gramophone and a graphophone is that the former uses the disk record, and the latter uses the cylinder record. Recognized dictionary authorities support the witness' testimony that phonographs, gramophones, and graphophones are instruments designed, and exclusively used, for reproducing sound. Funk & Wagnalls Standard Dictionary defines a phonograph as "an apparatus for recording sounds and reproducing them when desired," and a gramophone as "an instrument of the phonograph type for recording and reproducing articulate speech: invented by E. Berliner." The Oxford Dictionary defines a phonograph as "an instrument, invented by Thomas A. Edison in 1877, * * * by which sounds are automatically recorded and reproduced"; a gramophone as "the name given to one of the instruments devised for permanently recording and reproducing sounds"; and a graphophone as "the name on one of the instruments for recording and reproducing sound."

On the basis of the record, as hereinbefore outlined, coupled with the quoted dictionary definitions, we found, in our previous decision, C.D. 1973, *supra*, that "there is substantial sameness" between phonographs, gramophones, and graphophones that are *eo nomine* provided for in paragraph 1542, as amended, *supra*, and the tape

recorder and playback machine, with which these imported recorded tapes are used, and, therefore, held that this tape recorder and playback machine was within the class of merchandise contemplated by the statutory provision for "similar articles" in paragraph 1542, as amended.

The case comes before us at this time on rehearing, granted pursuant to defendant's motion, that was based on certain changes in tariff provisions through enactment of Public Law 693 (68 Stat. 913). The changes effected by that legislation applied to the shipment under consideration but were not called to the attention of the court when the case was originally presented. Government counsel gives an explanation in his memorandum, stating as follows:

Although in effect at the time of importation, this change was not brought to the attention of the court by either [sic] counsel for the plaintiff nor counsel for the defendant, through inadvertence, and it is contended that the change in language prevents classification of the merchandise herein, the recorded tapes, as parts of articles similar to those named in paragraph 1542.

Public Law 693, *supra*, so far as pertinent herein, reads as follows:

AN ACT

To reclassify dictophones in the Tariff Act of 1930.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That paragraph 372 of the Tariff Act of 1930 (19 U.S.C., sec. 1001, par. 372) is hereby amended by inserting after "cash registers, 25 per centum ad valorem;" the following: "business dictating, recording, and transcribing machines, chiefly used in business offices, of the type or types recording on nonmagnetizable recording medium, and parts thereof, 30 per centum ad valorem;".

SEC. 2. Paragraph 1542 of the Tariff Act of 1930 (19 U.S.C., sec. 1001, par. 1542) is hereby amended by striking out "dictophones," in each place it appears therein.

Defendant argues that the changes effectuated by Public Law 693, *supra*, limited the scope of amended paragraph 1542 to articles that are similar, not only in their functions of recording and reproducing sound but also in the manner by which they operate. Government counsel, in his memorandum to support the contention, states as follows:

It is submitted that the amendment to paragraph 1542, together with this testimony of the witness, clearly negatives the classification of tape recorders as articles similar to those named in paragraph 1542. This is so because each of the named articles, in the paragraph as enacted, makes use of a needle or some other cutting device in its recording or reproduction of sound. Congress, in Public Law 693, *supra*, struck the term "dictophones" from paragraph 1542, and provided elsewhere for certain recording machines "of the type or types recording on *nonmagnetizable* recording medium," showing a concept of a machine (previously provided for in paragraph 1542) which recorded sound other than by magnetic means, as does the tape recorder. [Italics quoted.]

It would thus appear that all the articles named in paragraph 1542, both as enacted and as amended, are similar not merely in their end function, that of recording or reproducing sound, but also *in the manner in which they do so*. Obviously, Congress did not intend to provide merely for sound recording or reproducing machines, but intended to restrict the paragraph to those doing so by a certain means. The tape recorders, recording and reproducing sound by other means, cannot fall into the definition of similar articles. [Italics quoted.]

We cannot draw from the provisions of Public Law 693 a legislative intent to limit paragraph 1542, as suggested by defendant. While our discussion of the present issue in our earlier decision, C.D. 1973, *supra*, included references to dictophones, the conclusion reached was not predicated upon the method of operation of such machines, as evidenced by the following excerpt from our opinion in the cited case, wherein we stated:

* * * This instrument or machine (illustrative exhibit 2, *supra*), like the phonographs, gramophones, graphophones, and dictophones, which are enumerated in paragraph 1542, as modified, *supra*, is exclusively used for recording and reproducing sound. Its method of operation, as stated by plaintiff's witness, is similar to that of a dictophone. *Of greatest significance, however, is that the articles named in the said modified paragraph 1542, and the machine under discussion, accomplish the same end result, i.e., the reproduction of sound by means of previous recordings.* * * * [Italics supplied.]

Public Law 693, *supra*, does not change or modify the foregoing interpretation of paragraph 1542, as amended. Instead, the legislation, by the elimination of the specific provision for dictophones in paragraph 1542 and the enactment of a new provision in paragraph 372, has classified dictophones within the purview of a provision covering certain types of dictating, recording, and transcribing machines, chiefly used in business offices.

The conclusion is supported by legislative history that appears in the United States Code Congressional and Administrative News, 83d Congress, second session, 1954, volume 2 (p. 3442), as follows:

### PURPOSE OF H.R. 8932

The purpose of H.R. 8932 is to reclassify, at the same rate of duty, dictophones as business machines rather than with instruments such as phonographs and gramophones.

### GENERAL STATEMENT

Dictophones are presently classified in paragraph 1542 of the tariff act with phonographs and similar articles dutiable at 15 percent ad valorem. This rate has been reduced from 30 percent in a trade agreement.

The tariff system of the United States has been imitated or used as a pattern by a number of other countries and, as a result dictophones are classified in the tariff schedules of those countries along with phonographs and other similar products which are considered luxuries and therefore carry relatively high tariff rates. This results in high and sometimes prohibitive rates on what is normally a business machine and not generally considered in this country to be in the luxury class.

Foreign countries have indicated that they will give serious consideration to a reclassification of dictophones as business machines, at substantially lower rates of duty, provided the United States sets the pattern.

This change in classification would in no way affect the United States tariff rate which is the same for phonographs and gramophones as for business machines. Dictophones are unquestionably business machines and should be so classified.

The case of *United States* v. *Wecolite Co.*, 45 C.C.P.A. (Customs) 54, C.A.D. 672, cited by defendant, has no application. There, the merchandise consisted of certain plastic mustard dispensers, and the issue related to the application of the similitude provisions of paragraph 1559 of the Tariff Act of 1930. The cited case offers nothing to influence the disposition of the present case.

For all of the reasons hereinabove set forth, as well as those stated in our previous decision, C.D. 1973, *supra*, which are incorporated herein by reference, we adhere to our conclusion therein and hold the recorded tapes in question to be dutiable at the rate of 15 per centum ad valorem as parts of articles contemplated by the provisions of paragraph 1542, as modified by T.D. 51802 and amended by Public Law 693, as claimed by plaintiff.

The protest is sustained and judgment will be rendered accordingly.